UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RAMONA L. DAVIS,                          )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )        No. 3:22-CV-213-DCP
                                          )
KILOLO KIJAKAZI,                          )
Acting Commissioner of Social Security,   )
                                          )
            Defendant.                    )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12].  Now before the Court are

Plaintiff's Motion for Summary Judgment or Judgment on the Pleadings [Doc. 15] and

Defendant's Motion for Summary Judgment [Doc. 18].  Ramona Davis ("Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant

Kilolo Kijakazi ("Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On August 4, 2016, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

began on July 1, 2015 [Tr. 163–65].[1]  The Commissioner denied Plaintiff's application initially

[*id.* at 70–79] and upon reconsideration [*id.* at 80–93].  Plaintiff then requested a hearing before

an ALJ [*Id.* at 107–08].  A telephonic administrative hearing was held on April 11, 2018 [*Id.* at

---

[1]        Plaintiff's application was completed the next day, August 5, 2016 [Tr. 166–67].

24–49]. On August 22, 2018, the ALJ found that Plaintiff was not disabled [*Id.* at 8–23]. The Appeals Council denied Plaintiff's request for review on February 8, 2019 [*id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a Complaint with this Court on March 8, 2019, seeking judicial review of the Commissioner's final decision under § 405(g) of the Social Security Act. *See Davis v. Saul*, No. 3:19-CV-082-HBG, 2020 WL 5735135, at *1 (E.D. Tenn. Sept. 24, 2020). Plaintiff argued that the ALJ committed several errors in finding she was not disabled, including "that the ALJ erred by failing to 'discuss why he did not find [her] diagnosed neuropathy or fibromyalgia [to be] a severe impairment, nor did he even mention those conditions in the decision,'" and "that the ALJ improperly failed to consider her symptoms such as pain, fatigue, or stiffness that are a result of these impairments." *Id.* at *3. This Court found that "the ALJ failed to specifically assess Plaintiff's fibromyalgia—whether by stating that he did not find it to be a severe impairment or detailing that he had considered the effects of Plaintiff's fibromyalgia in the RFC determination." *Id.* at *6. The Court remanded the matter to the Commissioner "for the ALJ to appropriately consider Plaintiff's fibromyalgia in the disability decision." *Id.* at *7.[2]

On remand, the Appeals Council directed the ALJ to offer Plaintiff an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision on the matter of Plaintiff's disability for the period prior to August 23, 2018 [Tr. 749]. The Appeals Council's remand order noted that Plaintiff had filed a subsequent claim for disability benefits under Title II on February 26, 2019, and was found disabled as of August 23, 2018 [*Id.*]. Accordingly, the Appeals Council directed that, "upon remand the [ALJ] will be limited to

---

[2]      The Court declined to issue a ruling as to Plaintiff's remaining alleged errors. *See Davis*, 2020 WL 5735135, at *7.

considering the period prior to August 23, 2018" [*Id.*].

A second administrative hearing was held before the ALJ on April 12, 2021 [*Id.* at 676–96]. On May 5, 2021, the ALJ issued a new decision, again finding that Plaintiff was not disabled [*Id.* at 655–75]. The Appeals Council denied Plaintiff's request for review on May 20, 2022 [*id.* at 643–49], making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 15, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2015 through August 22, 2018 (20 CFR 404.1571 et seq.).

3. From July 1, 2015 through August 22, 2018, the claimant had the following severe impairments: carpal tunnel syndrome, osteoarthritis, ankylosing spondylitis, inflammatory severe arthritis/rheumatoid arthritis, osteopenia and osteoporosis, hyperlipidemia, dysfunction major joints, and bilateral foot disorder (20 CFR 404.1520(c)).

4. From July 1, 2015 through August 22, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, from July 1, 2015 through August 22, 2018, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant could lift and carry, push and pull 10 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour day, she could sit for six hours, and stand and walk for two hours: could never climb ladders, ropes, or scaffolds: could occasionally climb ramps and stairs: could frequently balance, kneel, crouch, and crawl: could tolerate frequent

3

handling and fingering; and could tolerate occasional exposure to vibration and dangerous hazards, such as unprotected heights and dangerous moving machinery.

6. From July 1, 2015 through August 22, 2018, the claimant was capable of performing past relevant work as a receptionist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2015, the alleged onset date, through August 22, 2018 (20 CFR 404.1520(f)).

[Tr. 660–69].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

"Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citations omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

5

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity [("RFC")] and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R.

6

§ 404.1520(a)(4), -(e). RFC is the most a claimant can do despite his limitations. *Id.* §
404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529
(citations omitted). The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the
Commissioner must prove that there is work available in the national economy that the claimant
could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v.
Yuckert*, 482 U.S. 137, 146 (1987) (citation omitted)).

## V.     ANALYSIS

Plaintiff argues that the ALJ's disability determination is not supported by substantial
evidence because the ALJ erred by (1) finding Plaintiff's fibromyalgia and neuropathy were non-
severe impairments [Doc. 16 pp. 14–16]; (2) assigning little weight to the opinion of Plaintiff's
treating physician, Kristie Young, D.O. ("Dr. Young") [*id.* at 17–22]; and (3) finding Plaintiff's
statements concerning the intensity, persistence and limiting effects of her symptoms were not
entirely consistent with the medical evidence and other evidence in the record [*id.* at 22–24]. The
Commissioner responds that substantial evidence supports the ALJ's disability determination
because (1) whether the ALJ erred in finding Plaintiff's fibromyalgia and neuropathy were non-
severe impairments is irrelevant [Doc. 19 pp. 8–10]; (2) the ALJ properly assigned little weight to
Dr. Young's opinion [*id.* at 13–15]; and (3) the ALJ properly found that the objective evidence
was inconsistent with Plaintiff's allegations regarding the limiting effects of her symptoms [*id.* at
15–16].[3]

---

[3]     The Commissioner further argues that the ALJ properly found after determining Plaintiff's
RFC that Plaintiff could perform her past relevant work [Doc. 19 pp. 16–17]. Plaintiff, however,
does not directly challenge the ALJ's finding that she could perform her past relevant work aside
from making the arguments cited above. The Court therefore finds it unnecessary to address the
Commissioner's final argument.

Having reviewed this matter and considered the parties' arguments, the Court finds that Plaintiff has not presented a basis for disturbing the Commissioner's decision or otherwise remanding the case for further proceedings.

### A.    The ALJ's Evaluation of Plaintiff's Impairments

The Court initially considers Plaintiff's challenge to the ALJ's finding at step two of the sequential evaluation process.  Plaintiff alleges that the ALJ erred in "not considering all of [her] impairments as severe or in considering the limitations in [her] RFC," despite this Court's remand order directing the ALJ to consider her fibromyalgia and neuropathy [Doc. 16 p. 14].  Plaintiff acknowledges that "the ALJ did add some cites to a few medical records to minimize the problems relating to fibromyalgia and neuropathy," but argues that "there were many more that supported the consideration of these conditions as severe, and, more importantly, that the conditions impacted [her] RFC" [*Id.* at 15].

The Commissioner responds that the ALJ's analysis of Plaintiff's severe and nonsevere impairments is supported by substantial evidence and that, regardless, any error by the ALJ in finding Plaintiff's fibromyalgia and neuropathy were nonsevere impairments was "legally irrelevant" as the ALJ found Plaintiff had at least one severe impairment and considered all of Plaintiff's impairments in his RFC determination [Doc. 19 pp. 8–10 (citations omitted)].  The Commissioner relies on the fact that the ALJ "specifically noted that the regulations and Social Security Ruling 96-8p required the ALJ to consider the severe and nonsevere impairments in combination in formulating the RFC" [*id.* at 9 (citation omitted)]; "stated that the RFC was based on the 'entire record'" [*id.* (quoting Tr. 663)]; and "gave great weight to Dr. Misra's opinion, which specifically considered Plaintiff's alleged fibromyalgia and neuropathy" [*id.* (citing Tr. 544, 668)].

At step two in the sequential process, the ALJ must "consider the medical severity of [the claimant's] impairment(s)," 20 C.F.R. § 404.1520(a)(4)(ii), and whether the impairment or

8

combination of impairments is "severe." *Id.* § 404.1521. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). Plaintiff bears the burden at step two of proving the existence of a severe, medically determinable impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The step two determination is a "*de minimis* hurdle" in that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007)). "The goal of the test is to 'screen out totally groundless claims.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). Although the standard is *de minimis*, a claimant must still "produce or point to some evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *report and recommendation adopted*, 2010 WL 2836137 (E.D. Tenn. July 15, 2010).

If an ALJ finds that a claimant has at least one severe impairment, they must proceed with the remainder of the sequential analysis and consider all of the claimant's impairments when determining their RFC, including non-severe impairments. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Because an ALJ must consider all of a claimant's

impairments in formulating their RFC, the Sixth Circuit has found it "legally irrelevant" whether an ALJ erred in finding one or more of a claimant's impairments was non-severe, provided the ALJ (1) found at least one of the claimant's impairments was severe, (2) and "properly consider[ed] [the] nonsevere impairments at later steps." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (citations omitted).

Upon review, the Court finds that any possible error by the ALJ in categorizing Plaintiff's fibromyalgia and neuropathy as non-severe impairments would be harmless as the ALJ found Plaintiff had several severe impairments and properly considered all of Plaintiff's impairments, including non-severe impairments, in determining her RFC. *See Emard*, 953 F.3d at 851–52 (finding it legally irrelevant whether the ALJ erred in finding a claimant's impairment was non-severe provided they found a least one impairment was severe and "properly consider[ed] [the] nonsevere impairments at later steps"). Specifically, while the ALJ found that Plaintiff's fibromyalgia and neuropathy were non-severe impairments,[4] he found that Plaintiff's carpal tunnel syndrome, osteoarthritis, ankylosing spondylitis, inflammatory severe arthritis/rheumatoid arthritis, osteopenia and osteoporosis, hyperlipidemia, dysfunction major joints and bilateral foot disorder were severe impairments [*Id.* at 660–62].

The ALJ's decision also evinces that he considered the limiting effects—or lack thereof—of Plaintiff's non-severe impairments, in particular her fibromyalgia and neuropathy, as part of his RFC determination. The ALJ stated as part of his RFC determination that "the objective evidence

---

[4]    The ALJ found that Plaintiff's fibromyalgia was "not a severe impairment, but rather [] a mild, non-severe impairment where the diagnosis was largely based on Plaintiff's subjective complaints, with only mild evidence of it during [the consultative examiner's] examination" [Tr. 661–62 (citing Exhs. 1F, 2F, 7F, 21F, 23F)]. The ALJ similarly found that Plaintiff's neuropathy was a non-severe impairment based on several treatment notes and examinations findings from Plaintiff's treating physician as well as the consultative examiner [*Id.* at 662 (citing Exhs. 1F, 3F, 5F, 7F, 9F, 13F)].

10

and [Plaintiff's] treatment history generally do not support her alleged loss of functioning" [Tr. 665]. Immediately prior to this statement, the ALJ detailed the examination findings from Plaintiff's consultative examiner, Eva Misra, M.D. ("Dr. Misra"), in a separate paragraph [*Id.*]. Specifically, the ALJ noted that Dr. Misra found "[t]here were trigger points in her upper extremities and lower back, showing possible mild evidence of fibromyalgia" [*Id.*]. The ALJ also noted, however, that, "[s]ignificantly, [Plaintiff] had full range of motion universally, with full muscle strength, other than her left grip strength" [*Id.*]. The ALJ then reiterated Dr. Misra's finding regarding Plaintiff's full range of motion and muscle strength in the paragraph explaining why he believed the objective evidence and Plaintiff's treatment history did not generally support her alleged loss of functioning [*Id.* at 666]. The ALJ also cited several other examination findings from Plaintiff's treatment records as well as Plaintiff's own statements regarding her ability to perform daily activities as further reasons why the record evidence does not generally support Plaintiff's alleged loss of functioning [*Id.* at 665–66].

Plaintiff argues that the ALJ did not "fully consider[] the entire record" to the extent he "did add some cites to a few medical records to minimize the problems relating to fibromyalgia and neuropathy," but "there were many more that supported . . . that the conditions impacted [her] RFC" [Doc. 16 p. 15]. Specifically, Plaintiff cites treatment records from Plaintiff's prior treating physician, Christy Park, M.D. ("Dr. Park"); Dr. Young's treatment records; Plaintiff's own testimony "that she suffers from fatigue and pain in her hands"; and Dr. Misra's examination findings that Plaintiff had tender trigger points in the upper and lower extremities, as well as decreased grip strength bilaterally [*Id.* at 15–16 (citations omitted)].

The ALJ, however, expressly considered some of the same evidence Plaintiff relies on as part of his RFC determination, including Plaintiff's testimony regarding the pain in her hands [Tr.

11

664 (noting that Plaintiff testified that "[s]he had difficulty picking up coins and almost anything else. . . .sometimes she could not lift anything because of a weak grasp" and "[t]he severity of her hands is one of the reasons she had to retire" but finding Plaintiff's statements were not entirely consistent with the record evidence)], as well as Dr. Misra's findings regarding her fibromyalgia [*id.* at 667 (noting that Dr. Misra found "[t]here were trigger points in [Plaintiff's] upper extremities and lower back, showing possible mild evidence of fibromyalgia" but that "[s]ignificantly, she had full range of motion universally, with full muscle strength, other than her left grip strength.")].

While the ALJ did not reference Dr. Park's treatment records or the specific treatment notes from Dr. Young that Plaintiff relies on, the Court does not find that this additional evidence establishes that the ALJ did not appropriately consider the limiting effects of Plaintiff's neuropathy and fibromyalgia. The records from Dr. Park that Plaintiff relies on were from before the alleged onset date [*Compare* Doc. 16 p. 16 (noting Plaintiff last saw Dr. Park on March 31, 2015), *with* Tr. 163–65 (claiming a period of disability that began on July 1, 2015)]. In addition, Plaintiff only cites evidence from Dr. Park and Dr. Young regarding their diagnoses of fibromyalgia and neuropathy, not any functional limitations imposed by the providers as a result of these diagnoses [Doc. 16 p. 16 ("Dr. Park, the rheumatologist, diagnosed both neuropathy and fibromyalgia . . . . Dr. Young's records reflect those diagnoses as well." (citing Tr. 290, 305, & 335–77))]. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (finding the ALJ's RFC determination was supported by substantial evidence in part because "a diagnosis of fibromyalgia does not automatically entitle [the plaintiff] to disability benefits" (internal quotations and citation omitted)); *Gholston v. Comm'r of Soc. Sec. Admin.*, No. 5:11-CV-1482, 2012 WL 4092811, at *10 (N.D. Ohio Sept. 17, 2012) ("[T]he mere diagnosis of a condition does not speak to its severity or

12

indicate the functional limitations caused by the ailment." (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 151 (6th Cir. 1990))).

Finally, the ALJ need not expressly consider every piece of evidence from the record to have considered it. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) ("[I]t is well settled that . . . [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). While the ALJ did not expressly reference some of the evidence from the record that Plaintiff cites to, he made clear that his decision was controlled by Social Security Ruling 96-8p [Tr. 660 ("I must [] determine the claimant's residual function capacity. . . . In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe." (first citing 20 C.F.R. §§ 404.1520(e), 404.1545; then citing SSR 96-8p))]. *See Emard*, 953 F.3d at 851–52 ("District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." (citations omitted)). The ALJ also stated at the beginning of his RFC analysis that he had reached his RFC determination, "[a]fter careful consideration of the entire record" [*Id.* at 663]. *See Emard*, 953 F.3d at 851 ("[T]he ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination.").[5]

_____

[5] Plaintiff cites *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984), for the proposition that "administrative courts may not focus on some evidence, while ignoring other evidence" [Doc. 16 p. 15]. To the extent Plaintiff is arguing the ALJ effectively "cherry picked" the evidence, such argument is unconvincing as "the same process can be described more neutrally as weighing the evidence," *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009), especially when the ALJ relied on some of the same evidence cited to by Plaintiff. *See Mann v. Kijakazi*, No. 2:22-CV-55-DCP, 2023 WL 3276472, at *10 (E.D. Tenn. May 5, 2023) ("[T]he Court is satisfied that

13

For these reasons, the Court finds that the ALJ properly considered Plaintiff's non-severe impairments, including her fibromyalgia and neuropathy, as part of his RFC determination. *See Crabtree v. Kijakazi*, No. 3:20-cv-263, 2021 WL 3832228, at *2 n.1 (E.D. Tenn. Aug. 27, 2021) (finding any error by the ALJ in finding some of the plaintiff's impairments were not severe was harmless because "the ALJ . . . discussed both the presence and absence of functional limitations arising from Plaintiff's nonsevere conditions, analyzed medical evidence of all nonsevere conditions, discussed Plaintiff's testimony regarding her conditions, and cited to SSR 96-8P").

Because the ALJ found that Plaintiff had several severe impairments and properly considered all of Plaintiff's impairments as part of his RFC determination, the Court finds that it is legally irrelevant whether the ALJ erred in finding Plaintiff's fibromyalgia and neuropathy were not severe impairments. *See Emard*, 953 F.3d at 851–52. The Court therefore denies Plaintiff's first basis for remand.[6]

### B. Assessment of Dr. Young's Opinion

Plaintiff next argues that the ALJ "erred in giving little weight to opinion evidence from [her] treating physician" [Doc. 16 p. 17]. The Commissioner responds that "the ALJ properly considered [the treating physician's] extreme limitations and found them entitled to little weight" [Doc. 19 p. 15 (citation omitted)]. Upon review, the Court finds the ALJ did not err in his

---

the ALJ considered all of the record evidence and did not cherry pick which evidence to rely on because the evidence . . . that Plaintiff argues was important for the ALJ to consider is the same, or similar, evidence to what the ALJ did consider[.]").

[6] At the conclusion of her argument, Plaintiff also asserts that "[e]ven if some of the complained about limitations of the hands are due to rheumatoid arthritis versus fibromyalgia, the limitations are valid nonetheless and lend credence and strength to the fact that the RFC is not supported by substantial evidence" [Doc. 16 p. 16]. The ALJ, however, expressly considered Plaintiff's arthritis at several points in his RFC determination but found Plaintiff's statements regarding the limiting effects of her arthritis were not supported by her treatment records and own reported daily activities [Tr. 664–66], but nevertheless reduced Plaintiff's RFC as a result of her arthritis and ankylosing spondylitis [*id.* at 668].

14

evaluation of Plaintiff's treating physician's opinion as he provided good reasons for assigning little weight to her opinion.

Since Plaintiff filed her claim prior to March 20, 2017 [Tr. 163–65], the ALJ was required to assess the relevant medical opinion evidence in accordance with 20 C.F.R. § 404.1527, also known as the "treating physician rule." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017). Under the treating physician rule, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination" while "an opinion from a medical source who regularly treats the claimant . . . is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship." *Id.* at *6 (quoting *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2).

When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *See id.* An ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). "These reasons must be 'supported by the evidence

in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Here, the ALJ gave "little weight" to Dr. Young's Medical Source Statement [Tr. 666]. As to the supportability factor, the ALJ found Dr. Young's opinion was not well-supported because "Dr. Young used a check the box, short answer format, with no narrative showing treatment visit complaints, examination results, or radiological testing to explain and substantiate her opinion" and because her treatment notes otherwise reflected mostly normal physical examinations on several occasions during the relevant period [*Id.* at 666– 67 (citing Exhs. 5F, 6F, 8F, 19F)]. As to the consistency factor, the ALJ found that Dr. Young's opinion was "inconsistent with the examination findings and functional analysis opinion of [Dr.] Misra" as well as Plaintiff's answers in her function report [*Id.* at 667 (citing Exhs. 3E, 8E, 13F)]. As to the length of treatment, frequency of examinations, and nature and extent of the treatment relationship, the ALJ acknowledged that "Dr. Young saw the claimant regularly before, during and after the period-in-review from July 1, 2015, through August 22, 2018" and "appears to have been a primary care treatment provider for those treatment visits" [*Id.* at 666]. Finally, as to Dr. Young's specialization, the ALJ stated that "Dr. Young appears to be a doctor of osteopathy [*Id.*].

On appeal, Plaintiff argues that "[t]he ALJ's reasons for discrediting Dr. Young's opinions are not 'good reasons'" [Doc. 16 p. 19]. Plaintiff argues that the ALJ erred in discounting Dr. Young's opinion because she is a doctor of osteopathy [*id.* at 18–20] and by discounting Dr. Young's opinion because it is contained on a check-box form [*id.* at 20–21]. Finally, Plaintiff argues that the ALJ's reasoning for assigning little weight to Dr. Young's opinion was insufficient when considering the ALJ "gave *great weight* to the opinions of Dr. Eva Misra who examined

16

[Plaintiff] on one occasion and opined a sedentary RFC like Dr. Young" [*Id.* at 21]. In response, the Commissioner argues that the ALJ appropriately discounted Dr. Young's opinion because she is not a mental health specialist [Doc. 19 p. 14], her opinion was contained on a checkmark form unsupported by a narrative explanation or citations to objective clinical findings [*id.*], and her opinion was inconsistent with Dr. Misra's findings [*id.* at 15]. Having reviewed the parties' arguments, the Court finds no basis for remand as the ALJ provided several "good reasons" for discounting Dr. Young's opinion.

As an initial matter, the Court finds that the ALJ did not discount Dr. Young's entire opinion because of her specialization but, rather, only those portions of her opinion regarding Plaintiff's ability to handle stress. Specifically, the ALJ stated in his discussion of Dr. Young's qualifications that "Dr. Young opined on [Plaintiff's] ability to deal with work stress" and that he "stand[s] by [his] assertion that Dr. Young has had no specific mental health training to judge [Plaintiff's] ability to deal with stress" [Tr. 667]. The ALJ's discussion of Dr. Young's qualifications and specialization does not otherwise reference any of the other work-related limitations included in Dr. Young's opinion. Thus, there is no indication that the ALJ's discussion of Dr. Young's qualifications as they relate to her opinion about Plaintiff's ability to handle stress "tainted" the remainder of the ALJ's evaluation of Dr. Young's opinion.

Further, the Court finds that the ALJ appropriately relied on Dr. Young's qualifications as a "good reason" to discount the portion of her opinion regarding Plaintiff's ability to handle stress. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). While the ALJ noted that Dr. Young was a doctor of osteopathy, the ALJ did not compare Dr. Young's qualifications to that of a doctor of medicine at any point in

his decision. Rather, the ALJ discounted Dr. Young's opinion because she "has not received medical schooling regarding psychological or mental health issues" and "had no specific mental health training" [Tr. 667].

Plaintiff, in turn, argues that Dr. Young received medical schooling regarding mental health issues and, as a doctor of osteopathy, has the ability to practice the full scope of medicine—as evidenced by Dr. Young's letter and the fact that she prescribed Cymbalta, a psychiatric medication [Doc. 16 pp. 19, 19 n.1, 20]. While Dr. Young may have the ability to treat all aspects of medicine and likely received some form of medical schooling on psychological and mental health issues—although her letter fails to clarify what education she has received in these areas— there is no indication in the record that she regularly practices, or otherwise specializes, in such areas. The letter Dr. Young submitted only specifies that she is "a board-certified family physician" [Tr. 842]. In addition, while Dr. Young prescribed Cymbalta, it appears the prescription was intended to benefit Plaintiff's inflammation pain as opposed to a mental impairment.[7] Absent any additional evidence from the record showing Dr. Young specialized in psychological or mental health issues, the Court finds that Dr. Young's lack of specialization in these areas was a "good reason" to discount the portion of her opinion regarding Plaintiff's ability to handle stress. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 564, 567 n.2 (6th Cir. 2016) (finding that the ALJ appropriately discounted the opinion of the plaintiff's treating physician, a doctor of osteopathy who was a "general practitioner," in part because he was not a specialist in

---

[7]     Plaintiff relayed in a March 31, 2021 email that "Dr. Young agreed to take over [her] Rheumatology care" in August 2016 and that "Cymbalta 20 mg was added" at that time [Tr. 840– 41]. She further relayed in the email that as of July 2019, "[she] continued using Cymbalta and began Celebrex to try and relive [her] pain from inflammation" [*Id.* at 841]. A form submitted to the Social Security Administration listing Plaintiff's medications also states that Plaintiff was first prescribed "Duloxetine (Cymbalta)" in 2016 for "Pain/Fibromyalgia" [*Id.* at 836].

the areas of cardiac and vascular impairment).

Plaintiff next argues the ALJ erred by discounting Dr. Young's opinion because she utilized a "check box" form [Doc. 16 pp. 20–21]. Plaintiff asserts that "there is nothing in the social security rules and regulations allowing discrediting of an opinion of a physician because they filled out a 'check-box form,'" and, in fact, "the Commissioner sent Dr. Young a 'check-box' form to complete" [*Id.* (citing Tr. 485–87, 504–06)]. Plaintiff, in turn, argues that "[t]he supporting information regarding the check-box forms is contained within Dr. Young's medical records and treatment notes . . . , including the objective results of the nerve conduction studies, ANA positive bloodwork, visually noting the nodes and deformed fingers, and decreased range of motion measurements" [*Id.* at 21 (citing Tr. 485–87, 495–97, 499–501)]. Plaintiff also argues that "Dr. Young further noted that her opinions were consistent with laboratory data and other objective evidence" [*Id.* (citing Tr. 60, 264)].

"Many courts have cast doubt on the usefulness of [check-box] forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings.'" *Ellars*, 647 F. App'x at 566 (quoting *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)) (citations omitted). The Sixth Circuit has itself "declined to give significant weight to rudimentary indications that lack an accompanying explanation" as such reports are "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (citations omitted). However, "checklist opinions are not *per se* unreliable," and the ALJ may "take into consideration the format of a medical opinion, [] in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016).

In this case, the form Dr. Young utilized to issue her opinion consisted primarily of fill-in-the-blank and check-box questions, with a concluding open-ended question that asked, "Do you have any other comments related to the patient's medical restrictions/limitations?" [Tr. 489–91]. In response to this final question, Dr. Young listed Plaintiff's diagnosis of rheumatoid arthritis as well as several of her symptoms, including swelling, stiffness, and fatigue [*Id.* at 491]. The ALJ, in turn, assigned little weight to Dr. Young's opinion in part because "Dr. Young used a check the box, short answer format, with no narrative showing treatment visit complaints, examination results, or radiological testing to explain and substantiate her opinion" [*Id.* at 666].

That Dr. Young issued her opinion on a check-box form with no accompanying explanations or references to the record other than to list some of Plaintiff's diagnoses and symptoms was a "good reason" for the ALJ to assign little weight to the opinion. *See Hernandez*, 644 F. App'x at 474; *Toll v. Comm'r of Soc. Sec.*, No. 1:16-CV-705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) ("While the worksheet does contain a diagnosis of degenerative disc disease and a note that Plaintiff experiences sedation and dizziness as a side effect of his medications, it is lacking in any explanation of how Plaintiff's diagnoses impose these severe restrictions on his ability to perform work."); *Terry A.C. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5535, 2022 WL 2586479, at *5 (S.D. Ohio July 8, 2022) ("[C]heckbox forms with little or only minimal explanation, or that merely refer to a diagnosis, like the one in this case, are of only limited value." (citing *Toll*, 2017 WL 1017821, at *4)).

Furthermore, the ALJ did not rely solely on the form of Dr. Young's opinion in assigning the opinion little weight, as the ALJ also went on to analyze the evidence contained in Dr. Young's treatment notes. Specifically, the ALJ found that "Dr. Young's opinion is inconsistent with her own treatment notes, which show essentially normal objective examination results," including

20

"normal physical examination on May 8, 2015, September 3, 2015, April 21, 2016, September 15, 2016, October 10, 2016, April 12, 2017, December 6, 2017, February 28, 2018, and June 12, 2018," with the exception of "some joint tenderness on October 10, 2016, tender to palpation of right posterior sciatica on June 6, 2017, and maxillary sinus tenderness on February 28, 2018" [Tr. 667 (citing Exhs. 5F, 6F, 8F, 19F)]. Thus, not only did the ALJ discount Dr. Young's statement because of the form of her opinion, he also identified particular evidence that was at odds with her opinion.

On appeal, Plaintiff cites evidence from the record that would appear to support the findings contained in Dr. Young's opinion. Dr. Young did not herself cite to such evidence in her opinion, however. In addition, it appears the ALJ considered much of the same evidence Plaintiff relies on for support, but found it did not support Dr. Young's opinion [*Compare* Doc. 16 p. 21 (noting "the objective results of the nerve conduction studies, ANA positive bloodwork, visually noting the nodes and deformed fingers, and decreased range of motion measures" from Dr. Young's treatment notes on September 15, 2016, and October 11, 2016 (citing Tr. 485–87, 495–97, 499–501)), *with* Tr. 667 (noting Plaintiff's normal physical examination at several visits with Dr. Young, including on September 15, 2016, and October 10, 2016)]. This Court may not now reweigh such evidence. *See Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *13 n.13 (N.D. Ohio June 4, 2018) ("[A] medical source statement, which was in a 'check-box format,' was 'an impotent addition to the record with little to no persuasive value,' and it was 'immaterial' if there was certain evidence in the record consistent with the opinion 'because the ALJ provided "good reasons" for discounting his opinion and this Court may not reweigh the evidence.'" (quoting *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D.

21

Mich. Oct. 19, 2017)), *report and recommendation adopted*, 2018 WL 3104229 (N.D. Ohio June 4, 2018).

Accordingly, the Court finds that the fact that Dr. Young's opinion was issued on a check-box form with no accompanying explanations or citations to the record was a "good reason" for the ALJ to discount her opinion, especially since the ALJ also analyzed the relevant medical records provided by Dr. Young.

Finally, Plaintiff argues that the ALJ's "decision to give little weight to the opinions of a treating physician of over twenty (20) years is even more puzzling when one considers that [the ALJ] gave *great weight* to the opinions of Dr. Eva Misra who examined [Plaintiff] on one occasion and opined a sedentary RFC like Dr. Young" [Doc. 16 p. 21]. Plaintiff acknowledges that "Dr. Misra did not comment regarding [Plaintiff's] abilities to use hands for fine or gross manipulation," but argues that "the ALJ should have deferred to Dr. Young on this matter" as a result [*Id.*]. Plaintiff supports her arguments by citing Dr. Misra's examination findings that she had 3/5 grip strength in her left hand 4/5 grip strength in her right hand—findings she asserts "buttress" Dr. Young's opined manipulative limitations but that "the ALJ does not comment on"—as well as her own "unequivocal and unrebutted testimony . . . about the limits her hands impose upon her on a daily basis"—testimony she asserts the ALJ "ignored" [*Id.* at 21–22].

The Court identifies no error in the ALJ assigning Dr. Young's opinion little weight and assigning Dr. Misra's opinion great weight. While the treating physician rule typically requires an ALJ to give more deference to a treating physician's opinion than the opinion of a consultative examiner who examined a claimant one time, they are not required to do so if they state "good reasons" for discounting the treating physician's opinion. *See Gayheart*, 710 F.3d at 375–76 (stating that "[a]s a general matter, . . . an opinion from a medical source who regularly treats the

claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship" but that an ALJ may "provide 'good reasons' for discounting the weight given to a treating-source opinion"). Here, the ALJ did state good reasons for discounting Dr. Young's opinion, including that Dr. Young does not specialize in mental health issues and utilized a check-box form, as well as other reasons discussed below. Thus, the fact that Dr. Misra only examined Plaintiff on one occasion is not controlling and the ALJ was not otherwise required to "defer" to Dr. Young's opinions.

Plaintiff also cites Dr. Misra's examination findings regarding Plaintiff's grip strength as well as her own testimony regarding the limits imposed on her by her hands—evidence she argues the ALJ failed to consider—as evidence that she argues supports Dr. Young's opinion. The ALJ, however, expressly considered Dr. Misra's examination findings regarding Plaintiff's grip strength—as well as several other of Dr. Misra's findings[8]—as a reason to discount Dr. Young's opinion [Tr. 667 (finding "Dr. Young's opinion is inconsistent with the examination findings and functional analysis opinion of Eva Misra, M.D.," citing Dr. Misra's findings regarding Plaintiff's grip strength, and stating "[s]ignificantly, [Plaintiff] had full range of motion universally, with full muscle strength, other than her left grip strength")].

The ALJ also considered Plaintiff's testimony regarding the limitations imposed by her hands earlier in his decision but found this testimony as well as Plaintiff's other statements and testimony regarding the limiting effects of her impairments were not supported by the record

---

[8]     Specifically, the ALJ cited Dr. Misra's examination findings that Plaintiff's "gait and station were slightly stiff, but normal," she "can do station. . . . [and] was able to get up from a chair and on and off the table with only mild difficulty," she did not use an assistive device, she "could write normally," she had "no clubbing, cyanosis, or edema" despite her carpel tunnel surgery, and her "neurological exam was normal with a negative straight leg test" [Tr. 667 (citing Exh. 13F)].

evidence [*Id.* at 664 (noting that Plaintiff testified that "[s]he had difficulty picking up coins and almost anything else. Sometimes she could not lift anything because of a weak grasp. The severity of her hands is one of the reasons she had to retire" but finding Plaintiff's statements were not entirely consistent with the medical evidence and other evidence in the record)]. The Court, in turn, may not now reweigh this evidence. *See Holt v. Kijakazi*, No. 2:20-CV-87-JRG-DCP, 2021 WL 4931918, at *7 (E.D. Tenn. Oct. 1, 2021) ("[E]ven when a plaintiff would interpret the medical evidence differently . . . the Court will find no error if it finds that the ALJ's determination was within his 'zone of choice.'" (quoting *Blakley*, 581 F.3d at 407)), *report and recommendation adopted*, 2021 WL 4928890 (E.D. Tenn. Oct. 21, 2021). The Court therefore identifies no error in the ALJ assigning great weight to Dr. Misra's opinion while assigning little weight to Dr. Young's opinion.[9]

In sum, the ALJ provided several "good reasons" for assigning little weight to Dr. Young's opinion, including that she does not specialize in psychological and mental health issues, that her opinion was rendered on a check-box form with no accompanying rationales or citations to the record, that her examination findings conflict with her opined limitations, that Dr. Misra's opined limitations and examination findings conflict with her opined limitations, and that Plaintiff's own statements regarding her daily activities conflict with Dr. Young's opined limitations. The ALJ, in turn, supported his reasoning with citations to the evidence in the case record and such reasoning

---

[9]    The Court finds that the ALJ provided an additional good reason for affording little weight to Dr. Young's opinion by citing daily activities performed by Plaintiff that are inconsistent with Dr. Young's opinion, including that Plaintiff can feed herself, use the restroom, prepare meals, make her bed, load the dishwasher, do laundry occasionally, drive a car, and shop for groceries once per week [Tr. 667 (citing Exhs. 3E & 8E)]. *See Holt*, 2021 WL 4931918, at *8 ("[T]he Court finds that the ALJ gave yet another 'good reason' for discounting the treating source opinions because he found that the limitations imposed . . . conflicted with Plaintiff's admitted daily activities.").

24

was sufficiently specific to make clear to this Court the weight the ALJ afforded Dr. Young's opinion. *See Gayheart*, 710 F.3d at 376 ("These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). The Court therefore denies Plaintiff's second basis for remand.

### C.     The ALJ's Evaluation of Plaintiff's Symptoms

Plaintiff's final basis for remand is that the ALJ "erred [in his] evaluation of non-exertional limitations resulting from [Plaintiff's] severe impairments" [Doc. 16 p. 22]. Specifically, Plaintiff challenges the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record [*Id.* at 22–24]. In response, the Commissioner argues that "the ALJ properly evaluated Plaintiff's disability claim and found her allegations of disability not supported by the record" [Doc. 19 p. 16 (citing Tr. 661–68)]. Upon review, the Court finds that the ALJ applied the correct legal standards in evaluating the extent to which Plaintiff's statements regarding her symptoms are consistent with the record evidence and that his finding that such statements were not entirely consistent with the record evidence is supported by substantial evidence.

A claimant's subjective complaints are one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 404.929(c)(3) and Social Security Ruling 16-3p, 2017 WL 5180304  ("SSR 16-3p").

25

In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p, 2017 WL 5180304, at *10. The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain, such as:

(i)  the claimant's daily activities;

(ii) the location, duration, frequency, and intensity of the pain or other symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

(v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

(vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and

(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones*, 336 F.3d at 476 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations. . . has been abrogated" (citation omitted)).

In this case, the ALJ found:

> After careful consideration of the evidence, . . . claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Tr. 664]. In reaching this conclusion, the ALJ first identified the applicable regulations and standards that he was required to apply in evaluating Plaintiff's statements [*Id.* at 663 (stating that "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms

can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" and detailing the process by which he was required to analyze Plaintiff's symptoms)]. The ALJ then noted several portions of Plaintiff's testimony from her administrative hearings [*id.* at 664], before detailing findings from several of the pertinent medical records and Dr. Misra's consultative examination [*id.* at 664–65]. Finally, the ALJ found that, based on the earlier-cited medical records and Plaintiff's statements from her function reports regarding her daily activities, "the objective evidence and [Plaintiff's] treatment history generally do not support her alleged loss of functioning" [*Id.* at 665–66].

Plaintiff raises several challenges related to the ALJ's evaluation of her stated symptoms, including (1) that the ALJ did not apply the correct legal standards in evaluating her symptoms to the extent he found "[her] statements 'concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" [Doc. 16 p. 22]; (2) that the ALJ's "decision is devoid of the detailed analysis envisioned by SSR 16-3p" [*id.* at 23]; (3) that in light of her fibromyalgia, the ALJ was not permitted to "reject [her] complaints of pain solely because of a lack of [objective][10] medical evidence that fully corroborates the alleged severity of the pain" [*id.* (citation omitted)]; and (4) that her statements regarding the limitations from her pain and fatigue are supported by her own testimony and the medical records for the pertinent timeframe [*id.* at 23–24]. Plaintiff submits that the ALJ "[n]ot fully accounting for [her] credible complaints of pain, fatigue, and other symptoms led to the incorrect weighing of Dr. Young's opinion and an unsupportable RFC" [*Id.* at 24].

---

[10]     While Plaintiff states "subjective" medical evidence [Doc. 16 p. 23], the Court understands Plaintiff as having intended to state "objective" medical evidence.

Upon review, the Court identifies no error in the ALJ's evaluation of Plaintiff's statements about her symptoms. Plaintiff first argues the ALJ erred by "finding that [her] statements 'concerning the intensity, persistence and limiting effects of [her] symptoms are not credible'" [*Id.* at 22]. Plaintiff argues that "[u]nder the old regulations, it is not sufficient for the adjudicator to make a single, conclusory statement that . . . 'the allegations are (or are not) credible'" [*Id.* (quoting SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)]. Plaintiff asserts that "the ALJ erred [in] making the boilerplate statement cautioned against in SSR 96-7p," especially when Social Security Ruling 16-3p, which rescinded SSR 96-7p, "eliminat[ed] the use of the term 'credibility' . . . . [and] clar[ified] that subjective symptom evaluation is not an examination of an individual's character" [*Id.* (quoting SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)].

Plaintiff's argument is unpersuasive as the ALJ did not state that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible" [*Id.*]. Nor does it appear the ALJ used the term "credible" anywhere in his decision. Rather, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [Tr. 664]. The ALJ's statement, in turn, applies the correct standards as set forth in Social Security Ruling 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *2 ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."). For the reasons discussed below, the ALJ also did not make a "single, conclusory statement" regarding the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence in the record.

29

Plaintiff next argues that the ALJ's "decision is devoid of the detailed analysis envisioned by SSR 16-3p," including the factors set forth in Social Security Ruling 16-3p that an ALJ must consider in evaluating a claimant's statements about their symptoms [Doc. 16 p. 23]. The ALJ, however, extensively cited the relevant medical and other evidence that supported his conclusion, including evidence related to several of the relevant factors. As to Plaintiff's abilities to perform daily activities, the ALJ stated, that Plaintiff "reported [in her function reports] the ability to do light household chores, light grocery shopping, personal care, and drive," and that "she has no problems feeding herself, or using the toilet. . . . prepares her own meals. . . makes her bed, loads the dishwasher, and does an occasional load of laundry. . . can drive a car and go shopping for groceries an hour at a time, once a week" [Tr. 666]. As to the location, duration, frequency, and intensity of her pain and other symptoms, the ALJ noted that the "[m]edical records do indicate a history of inflammatory arthritis" and that while "some examinations have shown tenderness in various joints, during the period in review, the examinations have also shown a normal range of motion and normal gait with no tenderness" [*Id.* at 665].

As to the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate the pain or other symptoms, the ALJ noted that Plaintiff "has [] seen improvement with prescribed medication and various injections," including that "[i]n July 2017, the claimant reported that her previous injection into her bilateral navicular cuneiform joints helped significantly" and that Plaintiff "has taken appropriate medications, used topical cream, and undergone various injections, including biologic medication" [*Id.* at 664, 666]. Finally, as to treatment other than medication that Plaintiff has received, the ALJ noted that, "[i]n December 2017, treatment notes indicate that she did not have a follow-up with the rheumatologist, as she had been stable," "[h]er primary care physician prescribed only conservative treatment," and she

30

"has also not undergone any emergency room treatment or hospitalizations for her severe impairments during the period-in review" [*Id.* at 664, 666].

The Court finds that this analysis by the ALJ, which addressed several of the relevant factors set forth in Social Security Ruling 16-3p and detailed the record evidence related to these factors, sufficiently addressed the requirements of Social Security Ruling 16-3p and provided substantial evidence for the ALJ's finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record evidence. *See, e.g.*, *Fannin v. Berryhill*, No. 3:17-cv-236-DCP, 2019 WL 1434653, at *15 (E.D. Tenn. Mar. 29, 2019) (finding the ALJ's credibility determination was supported by substantial evidence when "the ALJ detailed [] various factors . . . , including inconsistences between Plaintiff's subjective allegations and the objective medical evidence, Plaintiff's reported daily activities, [and] Plaintiff's statements that were inconsistent with the medical evidence of record.").

Plaintiff next contends that because she suffers from fibromyalgia, "the ALJ cannot reject [her] complaints of pain solely because of a lack of [objective] medical evidence that fully corroborates the alleged severity of [her] pain" [Doc. 16 p. 23 (citing *Reed v. Sec'y of Health & Hum. Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992))]. As just detailed above, however, the ALJ did not reject Plaintiff's statements regarding her pain solely because of a lack of objective medical evidence. Rather, the ALJ also considered other evidence from the record, including Plaintiff's own statements from her function reports about her ability to perform daily activities, her improvement with medication, the fact that failed to attend a follow-up appointment with her rheumatologist because her symptoms were stable, and that she has not undergone any hospitalizations for her treatment. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806–07

31

(6th Cir. 2008) (finding that while "fibromyalgia is an unusual impairment in that its symptoms are often not supportable by objective medical evidence," "the ALJ properly weighed the evidence to determine that Vance was not credible with respect to the severity of her symptoms" as "[her] symptoms have either improved or remained stable" and "other evidence also supported the ALJ's finding that Vance was not entirely credible . . . including her activities of daily living").

Finally, Plaintiff argues that she "credibly testified about the limitations from [her] pain and fatigue," and that such testimony is supported by several portions of the record, including her own testimony that she has to use her energy wisely, "take it one hour at a time," and if she overdoes it, she cannot move for two days [Doc. 16 p. 23 (citing Tr. 34–35)]; Dr. Park's 2014 records indicating Plaintiff had fatigue and widespread joint pain [*id.* at 23–24 (citing Tr. 290-323)]; Dr. Young's records that "consistently note complaints of fatigue, joint pain, and myalgias even when the chief reason for the visits was for other conditions" [*id.* at 24 (citing Tr. 347)]; and Dr. Young's opinion that Plaintiff's impairments and symptoms require extra, unscheduled breaks and cause excessive absenteeism [*id.*]. However, even assuming such evidence supports her testimony,[11] "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial

---

[11]     The Court questions whether the evidence Plaintiff relies on to argue her testimony is credible is substantial evidence to support her conclusion, as such evidence includes her other testimony and statements to her physicians, Dr. Park's medical records from prior to the alleged onset date, and limitations from Dr. Young's opinion—an opinion the ALJ appropriately assigned little weight.

evidence would support the opposite conclusion." (internal quotations omitted)). As detailed above, the ALJ's finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of symptoms were not entirely consistent with the record evidence.

For these reasons, the Court finds that (1) the ALJ applied the correct legal standards in evaluating Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms and (2) his finding that such statements were not entirely consistent with the objective medical evidence and other evidence in the record is supported by substantial evidence. The Court therefore denies Plaintiff's final basis for remand.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgement or Judgment on the Pleadings [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge